

**ORDERED in the Southern District of Florida on September 13, 2013.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                          CASE NO. 11-35256-BKC-AJC
                                                                Chapter 7

**KATHLEEN ANNE SMITH CUTULI**
SSN:  XXX-XX-4677

_____Debtor._____/

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTION TO**
**SUBPOENA DUCES TECUM**

**THIS CAUSE** came before the Court for hearing on July 31, 2013 at 3:00 p.m. upon the

Objection to Subpoena Duces Tecum [ECF 849] and the supplement thereto [ECF 852] filed by

The Andersen Firm (the "Objection"), together with the Trustee's opposition thereto (including

the supporting affidavit of the Trustee) [ECF 866] (the "Trustee's Opposition"), and the

Trustee's Request For Judicial Notice [ECF 865].  Having reviewed the Objection, the Trustee's

Opposition, and Request for Judicial Notice, and having heard argument of counsel for the

Trustee, counsel for creditor Mehrdad Elie, counsel for The Andersen Firm, and the _pro se_

Debtor and her husband Greg Cutuli, the Court issued its initial ruling on August 5, 2013,

overruling in part The Andersen Firm's objections with respect to documents of the Debtor and reserving ruling to consider the remaining issues relative to the documents of non-debtor parties. The Court requested proposed memorandum orders from the parties; the Trustee submitted a proposed order; no further memorandum or proposed order was submitted from any other party. Having considered the foregoing, and for the reasons stated on the record in open court (which are incorporated herein by reference) and for the following reasons, the Objection is overruled with respect to the documents of certain non-debtor entities.

## I. FACTS

1.      On September 12, 2011, the Debtor Kathleen Smith-Cutuli (the "Debtor") filed her voluntary Chapter 7 petition [ECF 1]. Marcia T. Dunn is the duly appointed Trustee of the Debtor's bankruptcy estate (the "Trustee").

2.      On May 20, 2013, the Trustee caused to be issued a subpoena *duces tecum* to The Andersen Firm.  The Andersen Firm filed its Objection.

3.      On June 18, 2013, The Andersen Firm filed its Supplement to the Objection.  On July 26, 2013, the Trustee filed the Trustee's Opposition and the Request for Judicial Notice.

4.      The matter was set for hearing on July 31, 2013. [ECF 850, 858].  At the hearing, the Court heard the proffers and representations of the parties and requested the submission of further briefing in the form of proposed memorandum opinions.

5.      In the interim, the Court reviewed the record.  The record indicates that, on January 18, 2012, based upon a showing to the satisfaction of the Court that the Debtor had made efforts to hide assets from the reach of creditors and the Trustee, the Court entered an emergency ex parte order authorizing the Trustee to conduct an inspection of the Debtor's home (the "Seizure Order").  [ECF 232].

6.      According to the Trustee's affidavit filed in support of the Trustee's Opposition, on January 27, 2012, the Trustee seized physical and electronic data (in addition to substantial amounts of undisclosed cash and property) from the Debtor's home pursuant to the Seizure Order.

7.      The Trustee conducted searches of electronic and documentary information relating to possible asset protection mechanisms employed by Debtor.

8.      Based upon those searches the Trustee's counsel identified email communications between the Debtor, her husband Greg Cutuli, and The Andersen Firm.

9.      The electronic communications apparently included emails between the Debtor, Greg Cutuli, and The Andersen Firm attorney, Matt Harrod, purporting to relate to "offshore info" and "information on the WY LLC in=regards [sic] to asset protection…"   [ECF 866-1 at ¶5; 866-2].  Other emails request a "description regarding the protections offered by =the [sic] Wyoming LLC that we are about to enter into" and state "I would like to discuss=it [sic] with our accountant and one of Kathy's attorneys."  [ECF 866-3 at p. 6 of 15].

10.      One email attachment describes the "benefits of the Wyoming Close Limited Liability Company," including a discussion of the limitations that structure imposes on creditor's rights and specifically the limited efficacy of charging orders issued against Wyoming LLCs. [ECF 866-2 at p. 7 of 15].  Another attachment states: "Asset Protection:  It is difficult for a member's creditor to reach the assets of the LLC.  Under Wyoming law, the creditor of a member can only reach distributions made to the member, but the creditor cannot force the LLC to make such distributions."  [ECF 866-2 at p. 1 of 15; and 12 of 15].

11.      The Trustee contends The Andersen Firm holds itself out as a law firm providing estate planning and asset protection services to its clients. [ECF 866-1 at ¶6; *see also*

http://www.theandersenfirm.com/asset-protection-planning.htm], that the email communications

between the Debtor, Greg Cutuli, and The Andersen Firm occurred during the same time period

that Greg Cutuli and the Debtor were allegedly engaged in a "conspiracy to defraud creditors"

and, therefore, the Trustee should be allowed to obtain discovery from The Andersen Firm to

determine whether assets rightfully belonging to the estate were transferred in an effort to

defraud the creditors of the estate.  [ECF 865-2 at 2-23; 865-2 at 23; 865-3 at 1-5; 865-4 at 1-10].

## II. CONCLUSIONS OF LAW

### A.    Legal Standard

"A person withholding subpoenaed information under a claim that it is privileged… must

(i) expressly make the claim; and (ii) describe the nature of the withheld documents… in a

manner that, without revealing information itself privileged or protected, will enable the parties

to assess the claim."  Fed.R.Civ.P. 45(d)(2)(A).  Moreover, it is well-settled that the proponent of

a privilege bears the burden of proving all elements of the existence of the privilege:

> The attorney-client "privilege is not a favored evidentiary concept in the law since
> it serves to obscure the truth, and it should be construed as narrowly as is
> consistent with its purpose."  *United States v. Suarez*, 820 F.2d 1158, 1160 (11th
> Cir.1987). . . [T]he party seeking to assert privilege . . . has the burden of proving
> the applicability of the attorney-client privilege.  *Weil v. Investment/Indicators,
> Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir.1981).  Because the burden is
> on the proponent of the privilege, a trial court may not properly shift the burden to
> the opponent. *Hawkins v. Stables*, 148 F.3d 379, 381, 384 (4th Cir.1998) (trial
> court incorrectly assumed the privilege applied and shifted the burden of proof to
> the opponent of the privilege).

*In re Fontainebleau Las Vegas Contract Litig.*, No. 09-02106-MD-GOLD, 2011 WL 65760

(S.D.Fla. Jan. 7, 2011); accord, *U.S. v. Kelly*, 569 F.2d 928, 938 (5th Cir.1978) (listing four

elements that must be proven by party asserting attorney-client privilege).

The Andersen Firm filed its Objection [ECF 848] and Supplement to Objection [852],

claiming an "attorney client privilege . . . exists between the debtor and others with The

Andersen Firm" and later clarifying that "The Andersen Firm represented the debtor . . . [and] also represented the debtor's husband in interrelated matters."  [ECF 848 at ¶2; ECF 852 at ¶3].

  **B.**  **The Debtor's Attorney-Client Privilege Is Held By the Trustee.**

  As the Court has already found in its August 5, 2013 Order: "the Debtor's attorney-client privilege is held by the Trustee and has been waived."  [ECF 869].  *See In re Smith,* 24 B.R. 3, 4 (Bankr. S.D.Fla. 1982); e.g., *In re Williams,* 152 B.R. 123, 124 (Bankr. N.D.Tex. 1992) (transfer of right to pursue avoidance actions also effects transfer of evidentiary privileges); *In re Hotels Nevada, LLC*, 458 B.R. 560, 564 (Bankr. D.Nev. 2011)(trustee is successor to debtor with respect to attorney-client privilege; turnover ordered regarding debtor and non-debtor materials from law firm).

  **C.**  **Assuming the Existence of an Attorney-Client Privilege on the Part of Greg Cutuli, the Privilege Could Not Be Asserted Against the Trustee.**

  Based upon the representations, The Andersen Firm has represented the Debtor and "also represented the debtor's husband in interrelated matters."  [ECF 852 at ¶4.  The Trustee has discovered that an attorney from The Andersen Firm concurrently communicated with "Greg, Kathy," and others unknown to the court.[1] [ECF 866-1 at 4 of 15].  It appears that to the extent Greg Cutuli was a client of The Andersen Firm, he was a co-client with the Debtor.

  Courts have found that "[n]either the co-client nor community-of-interest privilege is effective in adverse litigation between the former clients."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). In other words, "[i]n a subsequent proceeding in which former co-clients are adverse, one of them may not invoke the attorney-client privilege against the other . . . that rule applies whether or not the co-client's communications had been disclosed to the other during the co-client representation.*"  Id.* at 366.

---

[1] The email is also addressed to "Michael" who is not identified other than by his email address.

Courts have applied the "joint-client/common-interest"[2] or "subsequent adverse action" exception in the bankruptcy context. The Bankruptcy Court for the Southern District of Florida recently considered the doctrine in *In re Ginn-LA St. Lucie Ltd., LLLP,* 439 B.R. 801, 804-05 (Bankr. S.D.Fla. 2010), where a trustee sought, and ultimately obtained, documents held by a number of non-debtors' attorneys who jointly represented the Debtor:

> [T]he well-established rule [is] that joint clients may not assert the attorney-client privilege against each other in subsequent adverse litigation between them. *In re Mirant Corp.*, 326 B.R. 646, 650 (Bankr.N.D.Tex.2005) (quoting *Brennan's, Inc. v. Brennan's Rests., Inc.,* 590 F.2d 168, 172 (5th Cir.1979) ("Assuming the prior representation was joint, defendants are quite correct that neither of the parties to this suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation."); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir.1970), cert. denied 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) ("In many situations in which the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other.").)).

Here, the Debtor's privilege (stemming from her former legal representation by The Andersen Firm) "passed to the Trustee's control on the Petition Date." *Id.* at 807. As such, the Trustee is entitled to invoke the "co-client exception" to obtain otherwise privileged documents relating to The Andersen Firm's former co-client(s) with the Debtor. *Id.; accord In re Fundamental Long Term Care* 489 B.R. 451, 455 (Bankr. M.D.Fla. 2013)(bankruptcy trustee, standing in the shoes of the debtor's wholly owned subsidiary was entitled to invoke the co-client exception to the attorney-client privilege); *In re Hotels Nevada, LLC*, 458 B.R. 560, 564 (Bankr. D.Nev. 2011)(debtor and non-debtor documents held by law firm discoverable by bankruptcy trustee based on co-client exception).

---

[2] "The co-client or joint-client privilege applies when multiple clients are represented by the same counsel on a matter of common interest. In contrast, the common-interest privilege applies when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities. See *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 359 (3d Cir.2007) (discussing contours of co-client privilege and common-interest privilege).

Thus, to the extent The Andersen Firm may have represented Greg Cutuli, it did so while jointly representing the Debtor.  The Trustee, now standing in the shoes of the Debtor, is adverse to Greg Cutuli; the Trustee has filed adversary proceedings against Greg Cutuli for the benefit of the Debtor's estate [Adv. No. 11-2799-BKC-AJC-A], and is attempting to liquidate assets that Greg Cutuli claims are owned by him, for the benefit of the Debtor's estate.  [ECF 191, Adv. No. 11-2799-BKC-AJC-A].  As such, any privilege held by Greg Cutuli cannot be asserted against the Trustee in his efforts to obtain evidence.  *See In re Hotels Nevada, LLC*, 458 B.R. at 573. Therefore, the attorney-client privilege asserted on behalf of Greg Cutuli is overruled.

      **D.**      **Had an Attorney-Client Privilege Been Held by Debtor or Greg Cutuli, the Crime Fraud Exception Would Apply.**

To determine whether the crime-fraud exception to the attorney-client privilege applies, federal courts apply a two part test:

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice.  Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*Cox v. Administrator US Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir. 1994).

"[F]or the crime-fraud exception to apply, 'the attorney need not himself be aware of the illegality involved; it is enough that the communication furthered, or was intended by the client to further, that illegality.'"  *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996). Here, the Trustee has demonstrated that the Debtor and Greg Cutuli attempted to defraud creditors by transferring and hiding assets at or before the time The Andersen Law Firm was consulted, and that they may very well have used the services of The Andersen Firm to further a scheme to defraud.  The California court ruled that the Debtor, Greg Cutuli, and their entity *alter-egos* committed fraudulent transfers, both at the time they received, and subsequent to

receiving, "off-shore" and "asset protection" advice from The Andersen Firm.[3]    [ECF 865

through 865-4].  On October 13, 2011, the California Superior Court for the County of Napa

issued a judgment explicitly finding that the Debtor, Greg Cutuli, and numerous of their alter-ego

entities "engaged in a civil conspiracy to carry out the fraudulent transfers."  [ECF 865-2 at ¶2].

That conspiracy dates back to at least April of 2008.  The Napa Court held that the

Debtor carried out the following fraudulent transfers dating back to that timeframe:

a) In April and June of 2008, the Debtor and Greg Cutuli entered into at least two
fraudulent agreements aimed at transferring multiple assets in an effort to defraud
creditors.  [ECF 865-2 through 4, Ex. A at ¶¶10-18; Ex. B at pp.7:19-8:24 and
p.21:21-22].  The transfers included 50% interests in various known entities
including 1 Executive Way, LLC, Albion Castle, LLC, St. Helena Castle
Investments, LP, St. Helena Hwy, LLC, Napa Smith Brewery & Winery, LLC.
[*Id.*]

b) On or about October 9, 2009, Debtor transferred $1,000,000 beyond the reach of
her creditors through a refinance of her residence in Napa, California.  [ECF 865-
2 at p.6 of 23 at ¶3].

c) On October 3, 2011, Debtor transferred over $2,000,000 to Mr. Cutuli's accounts.
[ECF 865-2 at p.6 of 23 at ¶4].

d) Debtor fraudulently transferred a 2004 Porsche, valued at $100,000, a 2006
BMW, valued at $143,530, and a 2008 Tesla, valued at $100,000 to Mr. Cutuli for
no consideration; Mr. Cutuli then liquidated those assets.  [ECF 865-2, Ex. A at
¶¶7-9].

The California court further found a "conspiracy between Cutuli, Smith, their entities and

others," utilizing the assistance of at least one known attorney (Michael Rupprecht), to

accomplish multiple acts of fraud.  [ECF 865-4, Ex B at p.17:15-18:2].  The conspiracy was in

place and ongoing from at least the time of the pre-nuptial agreement (April 2008) and continued

---

[3] The California court made extensive factual findings that Debtor, Greg Cutuli and others were engaged in a far-
reaching scheme to defraud creditors including findings of "actual" or "intentional" as well as "constructive" fraud.
[See e.g. ECF 865-3 at ¶ 8 of 15 through 865-4 at ¶ 3 of 10].  Bankruptcy courts have held that merely raising an
"inference that. . .transfers may have been fraudulent" is sufficient to invoke the crime-fraud exception.  *In re
Campbell*, 248 B.R. 435, 440 (Bankr. M.D. Fla. 2000) (emphasis added).

at least through Greg Cutuli's false testimony at trial (October 2011). [Id.]. All this, while the Debtor admitted she received notice of her obligation to pay $30 million in April of 2007 [ECF 866-3 at p.11 of 15 through 866-4 at p.8 of 15; ECF 865 at ¶2], and knew, by April 2008, of creditor Mehrdad Elie's multi-million dollar claim against her. [ECF 866-4 at p. 9 of 15 through 866-5 at p.12 of 12; ECF 865 at ¶3].

The Napa Superior Court found that, with respect to the fraudulent transfers that occurred in early 2008 [ECF 865, Ex. A at ¶¶10-18; Ex. B at pp.7:19-8:24 and p.21:21-22], the travel activities of Smith and Cutuli including "apparent documentation of trips and contacts in locations such as the Isle of Jersey, Isle of Man, and Cayman Islands, known to the court to be havens for off-shore banking," [ECF 865-3 at p.13 of 15 at p.11:7-8] evidence the couple's conspiracy to hide assets. [ECF 865-3 at p.11 of 15 at p.9:14]. The Napa Superior Court also found that the Debtor and Greg Cutuli, through communications with asset protection attorney Michael Rupprecht "sought or obtained to enable or aid [one or more individuals] to commit or plan to commit a crime or fraud." [ECF 865-3 at p.6 of 15, at p.4:14-21].

As such, the Court concludes that there is sufficient evidence already in the record to indicate that when the Debtor and Greg Cutuli sought advice from The Andersen Firm regarding "asset protection" and "off-shore accounts," they were in the process of committing fraud, and subsequently committed fraudulent acts after consulting with The Andersen Firm. Electronic communications located at the direction of the Trustee included emails between the Debtor, Greg Cutuli and The Andersen Firm's attorney Matt Harrod purporting to relate to "offshore info" and "information on the WY LLC in=regards [sic] to asset protection…." [ECF 866-2]. Other emails request contact information for other attorneys in other states. [Id.]. Additionally, the unredacted portions of documents submitted by The Andersen Firm in their Opposition reference

"investments," "funding," "trusts," a "portfolio," various "assignments," "Acts" and numerous entries that the Court believes relate to the management of assets and perhaps the creation of one or more LLCs or other corporate structures.  [ECF 852 at p. 4 of 19 through 15 of 19].

Whether The Andersen Firm was aware of the reasons the Debtor and Greg Cutuli used their services is not relevant to the application of the crime-fraud exception and this Court makes no finding on that issue.  The fact that The Andersen Firm's services were used during (and prior to) a scheme involving the commission of multiple acts of fraud related to the information obtained through said services is sufficient.  Therefore, the Court overrules The Andersen Firm's objections to the subpoena under the crime-fraud exception to the attorney-client privilege.

E.    **The Documents Sought by the Trustee are Reasonably Necessary, No Party has Demonstrated the Availability of Evidence Through Alternative Means, and the Trustee has Voluntarily Agreed to Alleviate The Andersen Firm's Claimed Burden In Duplicating Documents.**

The documents sought by the Trustee are reasonably necessary for the Trustee to accomplish her tasks associated with administering this bankruptcy estate and no party has demonstrated that the evidence sought is available through alternative means.   The Andersen Firm, the Debtor and Greg Cutuli have failed to demonstrate that the request is unduly burdensome.  *See* Fed. R. Civ. P. 45(c).  *See also*, *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).  Nevertheless, the Trustee has offered to alleviate any alleged burden on The Andersen Firm by paying the reasonable copying charges associated with the production. Finding that to be a reasonable accommodation, the Court incorporates the Trustee's offer as part of its order.

### III. CONCLUSION

Having reviewed the record and being otherwise fully advised in the premises, the Court concludes The Andersen Firm, and the Debtor and Greg Cutuli, have failed to meet the burden of

proving entitlement to the privileges asserted in the Objection.  The Debtor's privilege is controlled by the Trustee and said privilege has been waived.  The joint-client/subsequent adverse action exception applies to the privileges asserted on behalf of Greg Cutuli and any other co-clients, and the crime-fraud exception applies to negate any privileges asserted on behalf of the Debtor, Greg Cutuli, and any other co-clients.  Finally, The Andersen Firm's objection to producing the requested documents based upon the fact it would be unduly burdensome is without merit, given the offer of the Trustee to pay for all costs associated with the copying and reproduction of the requested documentation.

Accordingly, it is

ORDERED AND ADJUDGED that the Trustee's Request for Judicial Notice is **GRANTED** without objection; and, The Andersen Firm's Objection is **OVERRULED** in its entirety, with the exception that the Trustee has agreed to pay the reasonable costs for duplication of the documents produced.  The Andersen Firm is directed to produce all responsive documents within fourteen (14) days of the date of this Order.

# # #

Submitted By:
Joel L. Tabas
Florida Bar No. 516902
Tabas, Freedman, Soloff, Brown & Rigali, P.A.
Attorneys for Trustee, Marcia T. Dunn
One Flagler Building
14 Northeast First Avenue, Penthouse
Miami, Florida  33132
Telephone:    305-375 8171
Facsimile:     305-381 7708
E mail:        joel@tabasfreedman.com

Joel L. Tabas
Attorney Joel L. Tabas is directed to serve copies of this Order on the parties listed and file a Certificate of Service.